UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-cr-00045-TWP-TAB |
| ) | |
| ERICA HOWARD, ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

This matter is before the Court on *pro se* Defendant Erica Howard's ("Ms. Howard") Motion for Compassionate Release/Sentencing Modification, filed pursuant to § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. 29.) On June 2, 2020, Ms. Howard, an inmate at the Federal Medical Center in Lexington, Kentucky, filed her motion arguing that her pre-existing medical conditions place her at a high risk for severe illness from COVID-19 and that her children will not adequately be cared for if she remains incarcerated. Counsel was later appointed, and an Emergency Motion for Compassionate Release (Dkt. 35), was filed and that Motion is also before the Court. For the reasons explained in this Order, Ms. Howard's Motions are **denied**.

## I. BACKGROUND

On August 28, 2018, Ms. Howard pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. (Dkt. 24.) The Court sentenced Ms. Howard to 58 months confinement at the Bureau of Prisons ("BOP"), followed by three years of supervised release. *Id.* at 2, 3. The factual basis for her plea of guilty established that Ms. Howard worked as the office manager for a family-owned construction company in Franklin, Indiana, from January 2015 to May 2017. (Dkt. 7 at 8.) Her duties included managing deposits and payments to and from the company's bank accounts

for business operations. *Id.* From April 22, 2015 to May 17, 2017, Ms. Howard exploited this position to embezzle, divert, and misappropriate funds from the company's bank accounts and credit cards for her own personal benefit. *Id.* at 9. She did this on hundreds of occasions and ultimately stole $315,780.39. *Id.* at 10. To avoid detection, Ms. Howard never recorded the use of these funds in the company's financial records and falsely told her employer that she had paid the company's taxes and expenses. *Id.* Her employer was unaware that she was emptying the company's bank accounts until he received notice that the company had insufficient funds for a tax payment to the Internal Revenue Service. Ms. Howard immeasurably altered the lives of the family that owned the construction company as well as her co-workers. Although the company survived, three of Ms. Howard's former co-workers were laid off. The victim family had no choice but to cash in a life insurance policy and their retirement accounts to keep the business afloat and avoid laying off their other five employees.

Ms. Howard has a long history of similar criminal conduct, accumulating five unrelated felonies for theft, forgery, and fraud between 2007 and 2013. (Dkt. 19 at 8-10.) She has repeatedly committed new criminal offenses while serving sentences for previous convictions. *Id.* She committed the instant offense while she was on work release for a forgery conviction. *Id.* at 10. Until the instant offense, Ms. Howard avoided prison, serving sentences through probation, home detention, and work release. *Id.* at 8-10.

Ms. Howard is presently 44 years old. She seeks immediate release from confinement at BOP through the First Step Act, raising two grounds for relief. First, she argues that her pre-existing medical conditions place her at risk of severe illness or death from COVID-19. (Dkt. 35 at 5-14.) Her medical records indicate that she has a history of obesity, diabetes, sleep apnea, and mood disorders. (Dkts. 35-5, 35-6.) Second, she argues that her minor children are not being

2

cared for by their father or their stepfather. (Dkt. 35 at 14-16.) Instead, her older sister has moved into the home to care for Ms. Howard's 14 and 15 year old sons. *Id.* at 15.

The Government has filed a Response in opposition to Ms. Howard's Motion. They argue releasing Ms. Howard less than two years into her nearly five-year sentence cannot be reconciled with the danger she poses as a six-time recidivist or under Section 3553(a). (Dkt. 38 at 1.) Ms. Howard has been convicted six times for fraud and theft offenses—all felonies. *Id.* In four of those cases, including the instant case, she exploited the trust of her employer to steal from them. *Id.* And, in four of those cases, including the instant case, she was under court supervision on probation, parole, or work release when she perpetrated her crimes. *Id.* The Government argues such a pattern of recalcitrant fraudulent conduct demonstrates a deep-seeded disregard both for the law and an unreasonable risk of danger to the community. *Id.* at 2. The government submits that Ms. Howard's family circumstances are not "extraordinary and compelling reasons" because the Guidelines provision for "family circumstances" requires that Howard's minor children have no caregiver at all. U.S.S.G. § 1B1.13 app n.1(C)(i).

## II.  LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), the court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." However, the court may do so only "if it finds that extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A)(i).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied

3

and a list of specific examples." 28 U.S.C. § 994(t). In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release,[1] courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g., United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe the identity of the movant will impact on the factors the court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the court must determine whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Section 3142(g) is the provision outlining the factors the court must consider in determining whether a defendant should be detained pending trial. In turn, § 3142(g) provides:

> **(g) Factors to be considered**.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

---

[1] Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 132 Stat. at 5239 (First Step Act § 603(b)).

4

>**(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>**(2)** the weight of the evidence against the person;
>**(3)** the history and characteristics of the person, including—
>>**(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>**(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
>**(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### III.  DISCUSSION

Ms. Howard asks the Court to reduce her sentence because her pre-existing medical conditions place her at an increased risk of severe illness or death from COVID-19 and because her children are not being adequately cared for in her absence.  Because Ms. Howard's early release would present a danger to the safety of the community, the Court will first address this argument.

Each of the four factors that the Court must consider weighs in favor of finding that Ms. Howard presents a danger to the community.  First, although her offense was not violent, Ms. Howard abused a position of trust to carry out a fraudulent scheme that required long-term commitment to criminal behavior.  She repeatedly lied to her employer, claiming that she was using company funds to pay taxes and bills when, in reality, she was emptying the company's bank accounts for her own benefit.  Three of her co-workers lost their jobs, and the family that owns the company had to sacrifice part of their life savings to keep the business afloat.

5

Second, the weight of the evidence against Ms. Howard is overwhelming. Ms. Howard admitted her guilt. The factual basis for her guilty plea describes hundreds of payments that Ms. Howard made to herself from company bank accounts over a period of more than two years.

Third, Ms. Howard had a long history of theft, forgery, and fraud. She accumulated six unrelated felony convictions for these types of offenses between 2007 and 2018. She has repeatedly committed new criminal offenses while serving sentences for previous convictions. During the instant offense, she embezzled hundreds of thousands of dollars from her employer while she was on work release for a prior forgery conviction.

Fourth, in light of Ms. Howard's extensive criminal history, the Court finds that releasing her before her sentence is complete would endanger the community.

The Court acknowledges that Ms. Howard has medical conditions that place her at an increased risk of severe illness from COVID-19. However, the facility where she is housed is taking precautions to reduce spread of the virus and there is no evidence that she is too infirm to return to her previous criminal activities if released.

The Court is also sympathetic to the plight of her minor children. Sadly, incarceration for serious criminal activity, like Ms. Howard's, impacts many people besides the defendant. It is unfortunate that the children's father and stepfather appear to have walked out on their domestic responsibilities. Ms. Howard's older sister, however, has moved in with the children during this difficult time. While it may not be an ideal solution, an adult family member—Ms. Howard's sister—is in the home providing care and supervision to Ms. Howard's children. While these circumstances may be difficult, Ms. Howard's sister has cared for the two teenage boys for the past 10 months. (Dkt. No. 35-9.) These circumstances do not qualify for release under the statute. *See, e.g.*, *United States v. Carr*, No. 16-cr-054-WJM-1, 2020 WL 1815910, at *4 (D. Colo. Apr. 10, 2020) (finding no extraordinary and compelling family circumstances because defendant's

eldest daughter was able to care for defendant's minor children, and that "the hardship endured by the primary caregiver is not an 'extraordinary and compelling reason' justifying a modification of Carr's sentence").

Regarding the 18 U.S.C. § 3553(a) factors, the Court agrees with the Government that the need for Ms. Howard's sentence—to promote respect for the law and to reflect the seriousness of her crime—outweighs any justification for release. Although the Court applauds Ms. Howard's clean conduct history and participation in training programs during her imprisonment, (Dkt. 35-4), it has been just over two years since her sentencing. She has served less than half of her sentence. It is too soon for the Court to determine that Ms. Howard is no longer a danger to the community.

## IV. CONCLUSION

For the reasons explained above, Ms. Howard's Motions for Compassionate Release, Dkts. [29] and [35], are **DENIED**.

**SO ORDERED**.

Date: 10/21/2020

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Jessie A. Cook
Attorney-at-Law
jessieacook@icloud.com

Nicholas J. Linder
UNITED STATES ATTORNEY'S OFFICE
nick.linder@usdoj.gov